MORGAN, LEWIS & BOCKIUS LLP
CHRISTOPHER J. BANKS (SBN 218779)
cbanks@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:   415.442.1000
Fax:   415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
JOHN V. GORMAN*
jgorman@morganlewis.com
1701 Market Street
Philadelphia, PA 19103-2921
Tel:   215.963.5000
Fax:   215.963.5001

**Pro hac vice* application forthcoming

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT-PACKARD COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>DATEL HOLDINGS LTD., DATEL DESIGN & DEVELOPMENT LTD., DATEL DESIGN & DEVELOPMENT INC., DATEL DIRECT LTD., and DATEL ELECTRONICS LTD.<br><br>  Defendants. | Case No.<br><br>**COMPLAINT FOR TRADE SECRET MISAPPROPRIATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Hewlett-Packard Company ("HP") brings this Complaint for trade secret misappropriation and avers as follows:

**PARTIES**

1. Plaintiff HP is a Delaware corporation with its principal place of business at 3000 Hanover Street, Palo Alto, California 94304.

2. HP was founded in 1939 in a Palo Alto garage by college friends William Hewlett and David Packard. Today, HP is among the largest and most innovative technology companies in the world. HP now employs more than 320,000 people to serve customers in more than 170 countries with products ranging from software, personal computing, printing, and imaging to IT infrastructure and digital entertainment. In the last decade, HP has invested more than 20 billion dollars in research and development.

3. Defendants Datel Holdings Ltd. ("Datel Holdings") is a private limited company organized and existing under the laws of the United Kingdom, with its principal place of business at Stafford Road, Stone, Staffordshire, ST15 ODG, UK.

4. Defendant Datel Holdings operates as a holding company for four wholly owned subsidiaries:

    a. Defendant Datel Design & Development Ltd. ("Datel UK") is a proprietorship organized and existing under the laws of the United Kingdom, with its principal place of business at Stafford Road, Stone, Staffordshire, ST15 ODG, UK. Datel UK is engaged in the business of computer services and manufacturing.

    b. Defendant Datel Design & Development Inc. ("Datel Florida") is a corporation organizing and existing under the laws of the state of Florida, with its principal place of business at 33 North Garden Avenue, Suite 775, Clearwater, Florida 33755. Datel Florida is engaged in the business of electronic game wholesaling.

    c. Defendant Datel Direct Ltd. ("Datel Direct") is a company organized and existing under the laws of the United Kingdom, with its principal place of business at Stafford

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW

Road, Stone, Staffordshire, ST15 ODG, UK. Datel Direct is engaged in the business of manufacturing components of electronic products and devices.

    d. Defendant Datel Electronics Ltd. ("Datel Electronics") is a company organized and existing under the laws of the United Kingdom, with its principal place of business at Stafford Road, Stone, Staffordshire, ST15 ODG, UK. Datel Electronics is engaged in the business of computer manufacturing.

  5. Defendants Datel Holdings, Datel UK, Datel Florida, Datel Direct, and Datel Electronics refer to themselves, including on the internet,[1] as the "Datel Group" (hereinafter, the "Datel Group Defendants" or "Defendants").

  6. Working in concert, the Datel Group Defendants are engaged in the business of, *inter alia,* reverse engineering, creating video game "cheat" products (to enable players to beat video games), and providing integrated circuit chip design and development services, including those related to microchips for use in printer cartridges. The Datel Group Defendants employ a team of computer programmers, developers, designers, reverse engineers, and code hackers. In particular, the Datel Group has a systems analysis and reverse engineering division named "Raw Science" that employs an "intelligence team" made up of software engineers and encryption specialists. The Datel Group Defendants deliver their products to consumers around the world.

## JURISDICTION AND VENUE

  7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

  8. This Court has personal jurisdiction over the Datel Group Defendants at least because, on information and belief, the Datel Group Defendants, directly and through their agents, regularly engage in, solicit, and transact business, in the state of California, including by selling or otherwise placing their products, including their configuration and design for printer cartridge chips, into the stream of commerce, with the knowledge that they will reach customers in California and/or that their actions will have consequences within California.

  9. Upon information and belief, the Datel Group Defendants have known since at least before 2012 that HP has its principal place of business in California.

---

[1] *See* http://www.rawscience.co.uk/; http://www.datel.co.uk/pages/Development.aspx#.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because, on information and belief, the Datel Group Defendants transact business in this district and are subject to personal jurisdiction here. In addition, venue is proper because HP's principal place of business is in this district and HP has suffered harm here.

## INTRADISTRICT ASSIGNMENT

11. This is an intellectual property action that is subject to district-wide assignment pursuant to Local Rule 3-2(c).

## FACTUAL BACKGROUND

### HP's Printer and Cartridge Technology

12. HP, one of the world's leading technology companies, is in the business of manufacturing and selling products that span the areas of printing, personal computing, software services, and IT infrastructure.

13. HP's customers range from individual consumers to the world's largest businesses. HP focuses on simplifying technology experiences for its customers.

14. The HP Imaging and Printing Group, one of HP's core business groups, is the recognized industry leader of the digital transformation of printing.

15. HP introduced the world's first consumer thermal inkjet printers in 1984.

16. Since then, HP has sold millions of inkjet printers and billions of printer cartridges in the United States and throughout the world.

17. HP remains a pioneer in inkjet printing technology today. HP has a wide range of award-winning printing products and services for the home, office, and graphics markets, all of which offer its customers exciting new ways to be creative, save money, and improve productivity.

18. HP ships more than 1 million printers per week worldwide, and the International Data Corporation ranks HP as number one in inkjet and laser printer hardware market share.

19. Inkjet printers are popular as a result of their high print quality and quiet and fast operation. Typically, an inkjet printer uses a print head mounted on a carriage that moves relative to a printing surface. A control system activates inkjets on the moving print head at the

appropriate locations, causing the print head to eject ink drops onto the printing surface, thereby forming desired images and characters.

20. Inkjet printers of the type at issue in this lawsuit are paired with ink cartridges that store the ink supply. Ink cartridges need to be replaced when all of ink stored in them has been used. Attempting to print with an empty ink supply can cause damage to the printer.

### HP's Trade Secrets

21. HP inkjet printers and ink cartridges, in particular, the HP 930 and 950 series ink cartridges, are specially designed and configured to be used with each other. That is, HP inkjet printers and HP 930 and 950 series ink cartridges are specially designed and configured to communicate with each other in a fashion such that the printers can authenticate communication between the printers and cartridges, ensuring that secure and correct information is transmitted.

22. HP provides for secure communication between its inkjet printers and ink cartridges, including the HP 930 and 950 series ink cartridges, through use of proprietary trade secrets. In particular, HP uses confidential technology to ensure that certain of its inkjet printers communicate effectively with HP 930 and 950 series ink cartridges. A confidential process generates proprietary, secure master key codes within chips in HP printers. The confidential process also generates related proprietary, secure base key codes within chips in HP 930 and 950 printer cartridges.

23. An HP inkjet printer chip containing a master key code then authenticates an HP cartridge chip through the identification of a related base key code contained within it. If an ink cartridge does not have a chip containing an appropriate base key code, then that cartridge will not function in the HP inkjet printer.

24. Third party ST Microelectronics ("ST Micro") manufactures the chips ("ST Micro Chips") contained in the HP 930 and 950 series ink cartridges.

25. ST Micro sells ST Micro Chips to customers, including HP, for use in sensitive security applications. For example, in addition to printer ink cartridges, ST Micro Chips are also used as secure chips on credit cards.

26. ST Micro makes a "Development Kit" that allows its customers to develop software and generate firmware for ST Micro Chips. A Development Kit gives its user access to the operation of the ST Micro Chip, including, for example, to commands that enable or disable security features within the chip.

27. ST Micro does not make its Development Kit available to non-customers, and will only provide customers a Development Kit under very strict confidentiality terms, including, upon information and belief, prohibitions on reverse engineering and on providing the Development Kit to others.

28. A ST Micro Development Kit was used in the development and validation of the software and firmware used in the chips within HP 930 and 950 series ink cartridges, and within printers using such ink cartridges.

29. Through use of a master key code and HP's confidential key derivation process, one can derive a finite amount of related base key codes. When one of these base key codes are contained within a ST Micro Chip that is turn within an HP 930 or 950 series ink cartridge, an HP printer will authenticate the cartridge and permit its use with the printer.

30. These (a) master key codes contained in HP printers that use HP 930 and 950 series ink cartridges, (b) base key codes derived from such master key codes, and (c) the means of deriving these base key codes from a master key code, constitute trade secrets of HP.

31. These trade secrets are not readily ascertainable by proper means.

32. These trade secrets are not generally known to the public.

33. HP derives significant economic value from these trade secrets, and from the fact that they are not generally known. These trade secrets reduce proliferation of counterfeit printer cartridges, and protect HP from improper warranty claims based on non-HP cartridges. Further, the trade secrets protect the investment of time and resources that HP has made in developing its printer technology, by ensuring that competitors do not simply "copy" HP's technology, and instead invest their own resources to engineer "work around" chips compatible with HP printers.

34. Accordingly, HP has undertaken significant efforts to maintain the secrecy of the aforementioned trade secrets. Among other efforts, it has not disclosed its key codes outside of

COMPLAINT FOR TRADE SECRET MISAPPROPRIATION

HP, and has ensured that those who have information about or access to the trade secrets are obligated to maintain the secrecy of that information.

**<u>Defendants' Scheme To Improperly Learn HP's Trade Secrets For Use In Ink Cartridge Clones</u>**

35. Starting at least as early as 2012, the Datel Group Defendants commenced a scheme to improperly misappropriate HP's trade secrets, including to misappropriate (a) the master key codes contained in HP printers that use HP 930 and 950 series ink cartridges, (b) the base key codes derived from such master key codes, and (c) the means of deriving these base key codes from a master key code. This misappropriation would allow the generation of non-authentic chips containing HP proprietary base key codes that, when placed into ink cartridges clones, cause authentication by HP printers that use HP 930 and 950 series ink cartridges.

36. As the first part of the scheme, the Datel Group Defendants acquired, without permission from HP or ST Micro, a ST Micro Development Kit.

37. Representatives of the Datel Group Defendants had previously asked ST Micro for an ST Micro Development Kit, but ST Micro refused to provide it.

38. Second, on information and belief, the Datel Group Defendants used the improperly acquired ST Micro Development Kit to crack the security used on the ST Micro Chips within printers that use HP 930 and 950 series ink cartridges, and to misappropriate the trade secrets therein. Specifically, the Datel Group Defendants used the ST Micro Development Kit to determine the means that HP uses to derive base key codes from a master key code, to determine the master key codes contained in HP printers that use HP 930 and 950 series ink cartridges, and to derive base key codes from such master key codes.

39. Third, on information and belief, the Datel Group Defendants designed and configured chips that contained HP proprietary base key codes that, when placed in ink cartridge clones, would be authenticated in HP inkjet printers that use HP 930 and 950 series ink cartridges.

40. Finally, the Datel Group Defendants shared their design and configuration with other companies engaged in the business of manufacturing and selling printer cartridge chips, including chips for inclusion in clones of HP's 930 and 950 series ink cartridges.

COMPLAINT FOR TRADE SECRET MISAPPROPRIATION

## CLAIM FOR TRADE SECRET MISAPPROPRIATION

41. HP hereby incorporates by reference the allegations set forth in the previous paragraphs as though fully set forth herein.

42. HP owns as trade secrets (a) the master key codes contained in HP printers that use HP 930 and 950 series ink cartridges, (b) the base key codes derived from such master key codes, and (c) the means of deriving these base key codes from a master key code.

43. The Datel Group Defendants acquired HP's trade secrets by improper means and without HP's permission, at least through the unlawful use of the ST Micro Development Kit.

44. The Datel Group Defendants disclosed and used HP's trade secrets, without consent, at least through the Datel Group Defendants' sharing with other companies, who are engaged in the business of manufacturing and selling printer cartridge chips, the design and configuration for a chip meant to be contained in printer cartridges compatible with HP inkjet printers that use HP 930 and 950 series printer cartridges.

45. The Datel Group Defendants' activities constitute a misappropriation of HP's trade secrets in violation of Cal. Civil Code § 3426.1.

46. By reason of Defendants' actions, HP has suffered and is suffering actual losses in an amount exceeding $30,000,000, the precise amount to be determined at trial.

47. Defendants are unjustly enriched as a result of their misappropriation of HP's trade secrets.

48. On information and belief, Defendants' misappropriation of HP's trade secrets is willful and malicious, and therefore justifies an award of exemplary damages, plus costs and attorney's fees, pursuant to Cal. Civil Code §§ 3426.3(c) and 3426.4.

49. Defendants' actions are also causing irreparable harm to HP, and HP will continue to suffer irreparable harm, unless Defendants' actions are enjoined by this court pursuant to Cal. Civil Code § 3426.2.

## RELIEF REQUESTED

WHEREFORE, HP requests that the Court enter a judgment in its favor and against Defendants, and provide HP the following relief:

A. Order, adjudge, and decree that Defendants have misappropriated HP's trade secret information in violation of Cal. Civil Code § 3426.1;

B. Issue preliminary and permanent injunctive relief, pursuant to Cal. Civil Code § 3426.2, prohibiting Defendants, and their respective parents, subsidiaries, principals, officers, directors, agents, attorneys, employees, and all others in privity with each Defendant, from making any further use of HP's trade secrets, including prohibiting any further manufacture or sale of chips for printer cartridges that work in HP printers that use HP 930 and 950 series ink cartridges, and printer cartridges containing such chips, and ordering delivery to HP of all materials containing its trade secrets;

C. Pursuant to Cal. Civil Code §§ 3426.3, award HP damages for trade secret misappropriation equaling HP's actual losses caused by Defendants' misappropriation in an amount exceeding $30,000,000, plus the amount that Defendants were unjustly enriched by their misappropriation of HP's trade secrets, to extent that amount is not taken into account in computing damages for actual losses;

D. Order, judge, and decree that Defendants' misappropriation of HP's trade secrets is willful and malicious, and award HP exemplary damages equaling twice the amount of HP's actual losses, plus costs and attorney's fees, pursuant to Cal. Civil Code §§ 3426.3(c) 3426.4; and

E. Award HP such other and further relief as the Court may deem just and proper, including payment of a reasonable royalty

## JURY TRIAL DEMAND

Plaintiff HP hereby demands a trial by jury for each and every issue so permitted by law and statute.

Respectfully submitted,

Dated: June 23, 2014                MORGAN, LEWIS & BOCKIUS LLP


By   /s/ Christopher J. Banks
    Christopher J. Banks (SBN 218779)
    MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
    San Francisco, CA 94105-1596
    Tel: 415.442.1000
    Fax: 415.442.1001
    cbanks@morganlewis.com

    John V. Gorman (*pro hac vice* application forthcoming)
    MORGAN, LEWIS & BOCKIUS LLP
    1701 Market Street
    Philadelphia, PA 19103-2921
    Tel: 215.963.5000
    Fax: 215.963.5001
    jgorman@morganlewis.com

    Attorneys for Plaintiff
    HEWLETT-PACKARD COMPANY